**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **HENRY LOZANO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-14-CV-239-KC** |
| | § | |
| **VICENTE ORTEGA, Individually and** | § | |
| **as a Police Officer with the El Paso** | § | |
| **Police Department; GREG ALLEN, as** | § | |
| **Chief of Police of the El Paso Police** | § | |
| **Department; and THE CITY OF** | § | |
| **EL PASO,** | § | |
| | § | |
| **Defendants**. | § | |

**<u>ORDER</u>**

On this day, the Court considered Defendant City of El Paso's 12(b)(6) Motion to

Dismiss (the "City's Motion"), ECF No. 4, and Defendant Vicente Ortega's Rule 12(b)(6)

Motion to Dismiss ("Ortega's Motion"), ECF No. 11, in the above-captioned case (the "Case").

For the reasons set forth below, Ortega's Motion is **GRANTED** in part and **DENIED** in part.

The City's Motion is **GRANTED** in its entirety.

**I.     BACKGROUND**

**A.     Factual Background**

The following facts are derived entirely from Plaintiff Henry Lozano's ("Plaintiff") Civil

Rights Complaint ("Complaint").  On June 24, 2012, at approximately 3:00 a.m., Plaintiff was

walking by a car wash located at 7411 North Mesa, El Paso County, Texas, on his way to work

at the adjacent Walmart.  Compl. ¶ 15.  Plaintiff has a learning disability that prevents him from

understanding complex commands.  *Id.* ¶ 16.  He is well-known to the owners of the car wash,

and often picks up trash and helps around the business.  *Id.* ¶ 17.  On this particular morning,

1

Plaintiff found a pair of "clippers" in one of the trash cans near the car wash.  *Id.* ¶ 18.  He placed the clippers in his back pack, and proceeded to walk by the coin operated machines to check if there was any excess change in the slots.  *Id.* ¶¶ 19-20.  Finding no change, he continued to walk along North Mesa Street through the parking lot of the Home Depot store directly adjacent to his place of employment.  *Id.* ¶ 21.

As Plaintiff approached the Home Depot, an unmarked police vehicle driven by Officer Vicente Ortega ("Ortega") swerved in front of Plaintiff's path.  *Id.* ¶¶ 22-23.  Ortega was in plain clothes and did not immediately identify himself as a police officer.  *Id.* ¶¶ 25-26.  Fearing that he was under attack from an unknown assailant, Plaintiff tried to run from the car.  *Id.* ¶ 24.  Ortega exited his vehicle and pursued Plaintiff with his handgun drawn.  *Id.* ¶ 25.  While in pursuit, Ortega continued to shout at Plaintiff unintelligibly until eventually tackling him from behind to the pavement.  *Id.* ¶¶ 27, 29.

Once Plaintiff was subdued, several other unknown police officers (the "Unknown Officers") arrived at the scene.  *Id.* ¶ 29.  Ortega and the Unknown Officers then began to severely beat Plaintiff.  *Id.*  When Plaintiff yelled for them to stop, Ortega ignored his pleas, and continued to slam and beat him several more times until eventually handcuffing him.  *Id.* ¶ 30.  After Plaintiff continued to cry out in pain, Ortega responded by calling Plaintiff an "idiot" and a "stupid fuck."  *Id.* ¶ 31.  Ortega then took Plaintiff's head in his hands and slammed his face on the ground.  *Id.*  After Plaintiff's arrest, he was placed in a police vehicle, at which point he lost consciousness.  *Id.* ¶ 34.

As a result of the beatings, Plaintiff sustained various injuries to his shoulder, face, eyes, knees, arms, elbows, back, and abdomen.  *Id.* ¶ 33.  These injuries prevented Plaintiff from being

accepted for booking at the El Paso County Detention Facility, and he was instead sent to the University Medical Center for treatment. *Id.* ¶¶ 35-36.

Based on Ortega's complaint affidavit, Plaintiff was charged with unlawful use of a criminal instrument and resisting arrest. *Id.* ¶ 40. A magistrate judge rejected the charge of resisting arrest, and the District Attorney's Office declined to prosecute the charge of unlawful use of a criminal instrument. *Id.* ¶¶ 44-45.

### B.    Procedural Posture

On June 23, 2014, Plaintiff filed his Complaint with this Court alleging numerous federal and state causes of action against Ortega, the Unknown Officers, the El Paso Chief of Police (Greg Allen ("Allen")), and the City of El Paso (the "City"). *Id.* ¶¶ 9-13, 52-53. Pursuant to 42 U.S.C. § 1983, Plaintiff sues Ortega individually as well as in his official capacity as an El Paso police officer. *Id.* ¶ 12. Plaintiff sues Allen in his official capacity only, *id.* ¶ 13, and does not specify in what capacity he sues the Unknown Officers.[1]

In total, Plaintiff asserts seven causes of action against Ortega, and two against the Unknown Officers, all arising out of his arrest on June 24, 2012. *Id.* ¶¶ 53-129, 147-49. First, Plaintiff alleges that Ortega and the Unknown Officers used excessive force in violation of the Fourth and Fourteenth Amendments. *Id.* ¶¶ 53-74. Second, Plaintiff alleges that Ortega subjected him to racial- and disability-based discrimination in violation of 42 U.S.C. § 1981 and the Fourteenth Amendment. *Id.* ¶¶ 75-92. Third, Plaintiff alleges that Ortega retaliated against him for engaging in protected speech in violation of the First and Fifth Amendment. *Id.* ¶¶ 93-111. Fourth, Plaintiff brings a malicious prosecution claim against Ortega and the Unknown Officers pursuant to the Fourth and Fourteenth Amendments. *Id.* ¶¶ 112-29. Fifth, Plaintiff

---

[1] Reading Plaintiff's Complaint broadly, this Court assumes that the Unknown Officers are sued in both their individual and official capacities.

asserts that Ortega deprived him of various rights arising under the Texas constitution, including his right to be free from unreasonable searches and seizures, his right against cruel and unusual punishment, and his right to due process of law. *Id.* ¶ 147. Sixth, Plaintiff alleges that Ortega is liable for common law assault and battery. *Id.* ¶ 148. And seventh, Plaintiff asserts a claim against Ortega for intentional infliction of emotional distress ("IIED"). *Id.* ¶ 149.

The Complaint also asserts a variety of claims against Allen and the City. In particular, Plaintiff alleges that the City, acting through Allen, adopted deliberately indifferent policies, practices, customs, training, and supervision, all in violation of Plaintiff's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the Constitution. *Id.* ¶¶ 130-46. Plaintiff further alleges that the City's conduct violates Article 1, sections 9, 13, and 19 of the Texas constitution. *Id.* ¶ 147.

The City filed its Motion to Dismiss on September 8, 2014. *See* City's Mot. 1. Ortega, in turn, filed his Motion to Dismiss on September 29, 2014. *See* Ortega's Mot. 1. Plaintiff failed to file a response to either motion within the fourteen days required pursuant to Local Rule CV-7(e)(2), or anytime thereafter.

## II.   DISCUSSION

Before proceeding with its analysis, the Court pauses to discuss Plaintiff's counsel's failure to respond to Defendants' dispositive motions. Pursuant to Local Court Rule CV-7(e), when a party fails to file a timely response to another party's motion, "the court may grant the motion as unopposed." Although the Court declines to summarily grant the instant motions to dismiss without conducting the requisite review, Plaintiff's counsel would be wise to respond to any future motions if he wishes to prosecute this Case. *Cf. Watson v. Wintle-Newell*, Civil

Action No. G-06-0323, 2006 WL 3044477, at *1 (S.D. Tex. Oct. 19, 2006) (treating motion to dismiss as unopposed where opposing party failed to respond).

### A.      Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011).  Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  Nevertheless, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

5

**B.      Ortega's Motion**

Ortega argues that Plaintiff's § 1983 claims against him in his official capacity must be dismissed because they are duplicative of Plaintiff's claims against the City.  *See* Ortega's Mot. 6-7.  Ortega further argues that Plaintiff's claims against him in his individual capacity similarly fail because the Complaint contains insufficient factual allegations to overcome his qualified immunity defense.  *Id.* at 3-6.  Finally, Ortega seeks dismissal of Plaintiff's common law assault claim on the basis that the amount of force used was justified under the circumstances as a matter of law.  *Id.* at 7.  The Court addresses each of these arguments in turn.[2]

**1.      Plaintiff's official-capacity claims**

A claim against a government employee in his or her official capacity is considered a claim against the government entity itself.  *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997).  Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also id.* at 167 n.14 ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief." (internal citation omitted)).

Here, Plaintiff has named the City separately as a Defendant in the Case.  Compl. ¶ 11. Accordingly, Plaintiff's official-capacity claims against Ortega and the Unknown Officers are duplicative of his claims against the City, and are hereby dismissed.  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was . . . correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of

---

[2] Notably, Ortega does not move to dismiss Plaintiff's state constitutional claims or Plaintiff's claim for IIED.  *See* Ortega's Mot. 3-7.  As a result, the Court makes no mention of these claims in its analysis.

Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 832-33 (S.D. Tex. 2011) (dismissing a plaintiff's official-capacity claims against police officers as duplicative); *Harger v. City of W. Monroe*, Civil Action No. 3:14-CV-00976, 2014 WL 3828375, at *2 (W.D. La. Aug. 4, 2014) (same).

### 2.    Plaintiff's individual-capacity claims

As noted above, Ortega argues that the Court must dismiss each of Plaintiff's § 1983 claims because Plaintiff has failed to allege sufficient factual content to overcome Ortega's assertion of qualified immunity.  The Court analyzes each of Plaintiff's § 1983 claims separately below.

The defense of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It is often said that qualified immunity is not a mere defense to liability; it is an immunity from suit in the first instance.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Iqbal*, 556 U.S. at 685 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment))); *Johnson v. Johnson*, 385 F.3d 503, 528 (5th Cir. 2004).  Accordingly, the qualified immunity defense is properly asserted at the motion to dismiss stage.  *Mitchell*, 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e

repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."); *see also Gill v. Devlin*, 867 F. Supp. 2d 849, 855 (N.D. Tex. 2012) ("The issue of qualified immunity is often resolved on summary judgment, but the Court may also consider the issue in a motion to dismiss." (citing *Iqbal*, 556 U.S. at 677-78)).

A court's determination regarding an official's entitlement to qualified immunity requires a two-pronged analysis:  (1) "whether the plaintiff has alleged the violation of a statutory or constitutional right;" and (2) "whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)).  "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'"  *Carroll v. Carman*, --- U.S. ----, 135 S. Ct. 348, 350 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In other words, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and, "[w]hen properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, --- U.S. ----, 131 S. Ct. 2074, 2083 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.

When a government official invokes the qualified immunity doctrine, the burden is on the plaintiff to establish that the official is not so entitled.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  Thus, in the context of a motion to dismiss, "unless the pleadings plausibly state a claim of an objectively unreasonable violation of clearly-established law, a

defendant pleading qualified immunity is entitled to dismissal before full discovery is commenced." *Gill*, 867 F. Supp. 2d at 855 (citing *Behrens v. Pelletier*, 516 U.S. 299, 306-08 (1996)).

**a.**      **Excessive force in violation of the Fourth and Fourteenth Amendment**

Addressing Plaintiff's claim for excessive force directly, Ortega contends that "Plaintiff has not alleged specific factual allegations that the use of force was objectively unreasonable or that it violated the contours of the Fourth Amendment as they applied to Plaintiff." *See* Ortega's Mot. 5. While discovery may reveal that Ortega's actions did not constitute a Fourth Amendment violation, there is no question that the Complaint contains sufficient factual content to survive Ortega's Motion.

To state a constitutional violation for excessive force under the first prong of the qualified immunity analysis, a plaintiff must allege facts capable of showing "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush*, 513 F.3d at 500-01. "The objective reasonableness of the force . . . depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Id.* at 501. This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Bush*, 513 F.3d at 501.

Here, Plaintiff plainly states a Fourth Amendment violation based on the facts he presents in the Complaint. Plaintiff alleges that Ortega's unmarked police vehicle "careened" in front of

9

him while he was on his way to work.  *See* Compl. ¶ 22.  When Plaintiff ran away, Ortega

tackled him from behind and, along with the Unknown Officers, began severely beating him.

*Id.* ¶ 30.  After Plaintiff was subdued and placed in handcuffs, Plaintiff further alleges that

Ortega "took [his] head in his hands and slammed his face on the ground a second time and

slapped him viciously."  *Id.* ¶¶ 30-31.  These actions resulted in Plaintiff sustaining a variety of

injuries ultimately requiring immediate medical treatment.  *Id.* ¶¶ 33-36.  Looking only at the

pleadings and accepting Plaintiff's non-conclusory allegations as true, the Court concludes that

this amount of force is unconstitutionally excessive under the circumstances.  *See, e.g.*, *Bush*,

513 F.3d at 501 (denying summary judgment on excessive force claim where plaintiff proffered

evidence that officer "forcefully slammed [the plaintiff's] face into a vehicle when [she] was

handcuffed and subdued"); *Anderson v. McCaleb*, 480 F. App'x 768, 772-73 (5th Cir. 2012)

(concluding that district court erred in entering summary judgment against plaintiff on his

excessive force claim where plaintiff testified that, after initially fleeing from a marked police

vehicle, the officers tased and beat him and then eventually slammed him to the ground after he

was handcuffed); *Coons v. Lain*, 277 F. App'x 467, 469-70 (5th Cir. 2008) (reversing district

court's grant of summary judgment on excessive force claim based on plaintiff's testimony that,

while attempting to comply with the officer's orders, the officer tackled and slammed him

against a wall, threw him down on a bench, and twisted his arm behind his back); *Martinez-*

*Aguero v. Gonzalez*, 459 F.3d 618, 621, 626 (5th Cir. 2006) (affirming this Court's denial of

summary judgment based on plaintiff's affidavit that officer grabbed and kicked her while she

was "entirely docile and compliant").

     The Court's conclusion that Plaintiff has sufficiently alleged a Fourth Amendment

violation, however, does not end the qualified immunity inquiry.  "Even though an officer's use

of force must be objectively unreasonable to violate constitutional rights, a defendant's violation of constitutional rights can still be objectively reasonable if the contours of the constitutional right at issue are sufficiently unclear." *Bush*, 513 F.3d at 501. Moreover, "while the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Id.* at 502. As relevant here, the Fifth Circuit has held on numerous occasions that an officer violates clearly established Fourth Amendment law when he or she inflicts physical harm upon a suspect that is handcuffed or otherwise subdued. *See, e.g.*, *id.* ("[T]he [Fourth Amendment reasonableness] test is clear enough that [Officer] Galloway should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued."); *Brown v. Lynch*, 524 F. App'x 69, 81 (5th Cir. 2013) (noting that in August 2009, "the law was clearly established in this circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force"); *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (officer violated clearly established law where he tased non-resisting suspect twice, including once when he was handcuffed and subdued while lying face down on the ground); *see also Davis v. Evangelist*, Civil Action No. 06-3037, 2009 WL 2447897, at *5 (E.D. La. Aug. 6, 2009) ("The law is 'clearly established' that a person has a right to not be punched and kicked in the head once subdued." (citing *Bush*, 513 F.3d at 501)).

In light of the foregoing, the Court concludes that Plaintiff has met his burden of alleging facts that, if true, demonstrate a violation of clearly established Fourth Amendment law. Specifically, Plaintiff alleges that Ortega and the Unknown Officers continuously and severely beat him after he was already subdued, not resisting arrest, and no longer a legitimate threat to their safety. *See* Compl. ¶¶ 29-31. These allegations are sufficient at this stage in the litigation

to overcome Ortega's assertion of qualified immunity.  *See Bush*, 513 F.3d at 502; *Brown*, 524 F. App'x at 81; *Ramirez*, 716 F.3d at 379.  Accordingly, Ortega's Motion is denied as it relates to Plaintiff's excessive force claim.

### b.     Racial and disability discrimination in violation of § 1981 and the Fourteenth Amendment

Read broadly, the Complaint alleges racial and disability discrimination under two separate legal theories:  (1) violations of 42 U.S.C. § 1981, and (2) a § 1983 claim alleging violations of Plaintiff's Fourteenth Amendment rights.  For the reasons set forth below, Plaintiff's discrimination claim fails under either theory.

### i.     Section 1981 claim

To establish a § 1981 claim, the plaintiff must assert facts capable of showing the following three elements:  "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute."[3] *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997).  Section 1981 is not a general discrimination statute; "it prohibits intentional race discrimination with respect to certain enumerated activities."  *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003).  Specifically, the statute protects against "racial discrimination in the making and enforcement of contracts."  *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975).  Accordingly, the Supreme Court has held that "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' under which the plaintiff has

---

[3] Title 42 U.S.C. § 1981(a) provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal citation omitted); *see also id.* at 479 (observing that § 1981 "was [not] meant to provide an omnibus remedy for *all* racial injustice" and is instead "limited to situations involving contracts").

Here, Plaintiff's § 1981 claim fails to state a cause of action.  At the outset, any allegation that Plaintiff's arrest, beating, or subsequent prosecution was the result of his disability is not cognizable under § 1981 as a matter of law.  *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 (10th Cir. 1997) (holding that disability discrimination is not protected under § 1981 (collecting cases)); *Greggs v. Autism Speaks, Inc.*, 935 F. Supp. 2d 9, 12 (D.D.C. 2013) (rejecting a plaintiff's § 1981 claim based on her child's disability as not cognizable under the statute); *Duncan v. AT & T Commc'ns, Inc.*, 668 F. Supp. 232, 235 (S.D.N.Y. 1987) ("The repeated references to a partial disability or handicap are of no help to [the plaintiff], since § 1981 prohibits only discrimination that is based at least in part on racial classifications.").

Additionally, Plaintiff's § 1981 claim for racial discrimination[4] fails because the Complaint does not "identify an impaired 'contractual relationship,' under which [he] has rights."  *Domino's Pizza*, 546 U.S. at 476 (internal citation omitted).  Instead, the crux of Plaintiff's claim is that his "race was a motivating factor in the decisions to use excessive force and then maliciously prosecute [him] with false charges."  *See* Compl. ¶ 83.  While Plaintiff may, and does, assert an alternative cause of action based on these facts arising under § 1983 and the Fourteenth Amendment, he cannot maintain a § 1981 claim without allegations that Ortega somehow interfered with his contractual rights.  *See Domino's Pizza*, 546 U.S. at 476 ("Absent the requirement that the plaintiff himself must have rights under the contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms . . . .").  Accordingly, the Court grants Ortega's Motion as it relates to Plaintiff's §

---

[4] Plaintiff alleges that he is of Mexican-American ancestry.  *See* Compl. ¶ 1.

1981 claim.

### ii.        Plaintiff's Fourteenth Amendment claim

In addition to his § 1981 claim, Plaintiff further alleges that Ortega and the Unknown Officers violated his right to equal protection under the Fourteenth Amendment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against [him] because of [his] membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (internal quotation marks and citation omitted); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). To survive a motion to dismiss, "[a] section 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *accord Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 719-20 (S.D. Tex. 2002) (collecting cases).

Here, Plaintiff does not offer a single fact to support the conclusion that his beating, arrest, or subsequent prosecution was tainted by race-based motivations. He does not allege that Ortega made a racially insensitive remark, nor does he allege facts indicating that he was treated differently from similarly situated suspects outside of his protected class. Instead, Plaintiff merely states in conclusory fashion that his "race was a motivating factor in the decisions to use excessive force and then maliciously prosecute [him] with false charges." *See* Compl. ¶ 83. This unsupported allegation is insufficient to state a plausible cause of action for racial discrimination. *See Iqbal*, 556 U.S. at 680-81 (the plaintiff's allegation in a discrimination case that defendants "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or

14

national origin" was a "bare assertion" that was "not entitled to be assumed true" (citing *Twombly*, 550 U.S. at 554)) (internal quotation marks omitted and alterations removed).

Moreover, even if the Court were inclined to impute a *disability*-based animus to Ortega based on Plaintiff's allegations that Ortega referred to him as an "idiot" and a "stupid fuck," these remarks, without accompanying allegations of unequal treatment, are insufficient to sustain an equal protection claim. *See Poche v. Gautreaux*, 973 F. Supp. 2d 658, 671 (M.D. La. 2013) ("[T]o make out a violation of the equal protection clause, a plaintiff must allege facts sufficient for the Court to draw the reasonable inference that 'the challenged government action classifies or distinguishes between two or more relevant groups.'" (quoting *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996))); *see also Doe v. Caldwell*, 913 F. Supp. 2d 262, 277 (E.D. La. 2012) ("To state at [the motion to dismiss] juncture an Equal Protection violation, and thereby satisfy their burden of alleging a Constitutional violation sufficient to warrant § 1983 relief, the plaintiffs must allege that they have been purposefully treated differently from others similarly situated . . . ."). Here, there is nothing in the Complaint but Plaintiff's naked allegations to indicate that Ortega or any other El Paso Police Department official treats mentally disabled suspects less favorably than other individuals similarly situated. Accordingly, this claim, too, is dismissed.

c.      **Retaliation in violation of the First and Fifth Amendment**

Moving on to Plaintiff's retaliation claims, the Complaint alleges that Ortega's use of excessive force was motivated in part by Plaintiff's "exercise of his constitutionally protected right to not incriminate himself and to aver that he had not committed any offense." *See* Compl. ¶ 100. Ortega responds by noting that "Plaintiff pleads no facts to support that he engaged in any purported protected speech other than to tell the officers that they were hurting him during his

arrest." Ortega's Mot. 5.  After due consideration, the Court concludes that, whether analyzed

under a First or Fifth Amendment framework, Plaintiff's retaliation claim is without merit.

### i.        Retaliation under the First Amendment

A § 1983 claim of retaliation for the exercise of free speech requires proof of three

elements:  (1) the plaintiff was engaged in constitutionally protected activity, (2) the defendant's

actions caused him to suffer an injury that would chill a person of ordinary firmness from

continuing to engage in that activity, and (3) the defendant's adverse actions were substantially

motivated against the plaintiff's exercise of the constitutionally protected conduct.  *See Keenan*

*v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *see also Kinney v. Weaver*, 367 F.3d 337, 358 (5th

Cir. 2004) ("[T]he First Amendment is violated in 'ordinary citizen' cases if the individual

engaged in conduct protected by the First Amendment and the government took action against

the person because of that protected conduct." (citing *Rolf*, 77 F.3d at 827)).

Here, Plaintiff's claim fails because he does not allege a single fact that would allow this

Court to infer that his beating, arrest, or subsequent prosecution was a reprisal for his statement

that "he had not committed any offense."  *See* Compl. ¶ 100.  Although this Court is mindful that

"the First Amendment protects a significant amount of verbal criticism and challenge directed at

police officers," *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), the Complaint here merely

recites in conclusory fashion the elements of a First Amendment retaliation claim.  Plaintiff

states, without any further factual enhancement, that he "exercised his constitutionally protected

right to question law enforcement and/or engaged in protected speech related to the

constitutional rights of citizens with respect to searches of their property by the police and

objectionable police conduct."  Compl. ¶ 99.  He further alleges that "[t]he excessive force used

against Plaintiff in retaliation for his protected conduct would deter a person of ordinary firmness

from continuing to engage in the protected conduct," and that the "exercise of his constitutionally protected right to not incriminate himself and to aver that he had not committed any offense was a substantially [sic] motivating factor in the excessive force used by [the] individual Defendants." *Id.* ¶¶ 100-01.

While these statements accurately recite the governing standard for First Amendment retaliation claims, they do not allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678 ("[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to survive a motion to dismiss). In particular, while Plaintiff alleges that (1) he "aver[ed] that he had not committed any offense," *see* Compl. ¶ 100, and (2) he was beaten and subsequently prosecuted, *see id.* ¶¶ 29-31, 40, he fails to allege (3) facts supporting an inference that Ortega's actions were "substantially motivated" by Plaintiff's protected expression. *Cf. White v. Jackson*, Civil Action No. 7:13-cv-0050-O, 2014 WL 99976, at *11 (N.D. Tex. Jan. 10, 2014) (denying motion to dismiss First Amendment retaliation claim where the plaintiff alleged that the officer tased him after his persistent complaints about the officer's actions and his request for his father to contact an attorney); *Harvey v. Montgomery Cnty., Tex.*, 881 F. Supp. 2d 785, 804 (S.D. Tex. 2012) (concluding that the plaintiff stated a plausible claim for First Amendment retaliation at the motion to dismiss stage based on allegations that officers arrested him after he threatened to go inside his house and call the Sheriff to complain about their conduct).[5]  Simply put, based upon the facts alleged, it is not clear how Ortega's actions were substantially motivated by Plaintiff's statement that he did not commit any offense.

---

[5] *See also Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (reversing district court's grant of summary judgment against plaintiff on First Amendment retaliation claim where plaintiff testified that officer arrested her in response to her comment that officer would be treating her differently if he "didn't have that badge"); *Enlow v. Tishomingo Cnty., Miss.*, 962 F.2d 501, 509 (5th Cir. 1992) (holding that district court erred in awarding summary judgment to officer on plaintiff's First Amendment retaliation claim where plaintiff was arrested shortly after repeatedly criticizing officers during police raid and asking them whether they had a search warrant).

Indeed, to the contrary, Plaintiff consistently maintains that "he was a victim of Defendant Ortega's unprovoked attack." *See* Compl. ¶ 40; *see also id.* ¶ 43. Thus, construing Plaintiff's Complaint liberally and accepting all well-pleaded allegations as true, the Court concludes that Plaintiff has not stated a valid First Amendment retaliation claim. *See Duggan v. City of League City, Tex.*, 975 F. Supp. 968, 970-71 (S.D. Tex. 1997) (dismissing a plaintiff's First Amendment retaliation claim with prejudice where "the Court can fathom no way in which the [Plaintiff's] rights to free speech were infringed or that the officers did anything in retaliation for any speech by the [Plaintiff]").

Finally, to the extent Plaintiff alleges retaliation for his refusal to incriminate himself, *see* Compl. ¶ 100, his claim is more appropriately understood to arise under the Fifth Amendment. *See Tate v. Sharp*, Civil Action No. 1:11-CV-00268-GHD-DAS, 2013 WL 664865, at *9 (N.D. Miss. Feb. 22, 2013) ("The right to remain silent derives from the Fifth Amendment, not the First Amendment, and thus, allegations concerning a right to remain silent similarly are not helpful to [the plaintiff's] allegations of a First Amendment claim.").

### ii.    Retaliation under the Fifth Amendment

While § 1983 retaliation claims are exceedingly rare outside of the First Amendment context, a plaintiff may maintain a retaliation claim predicated upon a different constitutional right provided he or she alleges the following:  "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the [plaintiff] for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (setting forth retaliation elements in the context of a prisoner's § 1983 claim); *see also Kole v. Vill. of Norridge*, 941 F. Supp. 2d 933, 954 (N.D. Ill. 2013) (requiring plaintiffs asserting Second, Fourth, Fifth, and Fourteenth Amendment retaliation claims to "plausibly allege that

they engaged in constitutionally protected activity, that they suffered a deprivation that would likely deter protected activity in the future, and a causal connection between the two"). At the motion to dismiss stage, a plaintiff "must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

As an initial matter, Plaintiff's retaliation claim fails for the same reason his discrimination claim fails: the Complaint contains no factual allegations that would support an inference that any adverse action taken by Ortega or the Unknown Officers was motivated by Plaintiff's invocation of any constitutional right, including his Fifth Amendment right against self-incrimination. *See Jones*, 188 F.3d at 325 ("Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the [retaliation] claim."); *cf. Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (a plaintiff can survive a motion to dismiss if he "allege[s] a chronology of events from which retaliation may plausibly be inferred" (internal quotation marks and citation omitted)); *Wood v. Nesmith*, 62 F.3d 391, 1995 WL 449730, at *3 (5th Cir. June 26, 1995) (unpublished) (prisoner whose property was destroyed immediately after he refused to answer questions about an ongoing forgery investigation stated an actionable Fifth Amendment retaliation claim).

Moreover, there are no facts suggesting that Plaintiff even invoked his Fifth Amendment right in the first instance. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This right, however, is not self-executing; thus, "a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984); *accord Bohannan v. Doe*, 527 F. App'x 283, 295-96 (5th Cir. 2013). Here, Plaintiff

alleges that when Ortega attempted to coerce him into admitting that he was involved in criminal conduct, Plaintiff affirmatively stated "that he had not committed any offense."  *See* Compl. ¶ 100.  Thus, there are no facts supporting an inference that Plaintiff engaged in any constitutionally protected Fifth Amendment conduct, and his retaliation claim is hereby dismissed.  *See Jackson v. Dohman*, Civil Action No. 11-6890, 2013 WL 775598, at *2 (E.D. Pa. Mar. 1, 2013) (dismissing Fifth Amendment retaliation claim where the plaintiff "admitt[ed] that he did not remain silent and instead answered [the officer's] question in the negative").

### d. Malicious prosecution in violation of the Fourth and Fourteenth Amendments

Ortega argues that Plaintiff's malicious prosecution claim fails because "the Fifth Circuit has clearly established that a free-standing malicious prosecution claim based solely upon Section 1983 is not viable."  *See* Ortega's Mot. 6 (citing *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (en banc) and *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010)).  For the reasons set forth below, the Court agrees.

In *Castellano*, the Fifth Circuit addressed the "uncertain law" surrounding § 1983 claims for malicious prosecution.  352 F.3d at 942.  While ultimately holding that "the assertion of malicious prosecution states no constitutional claim," the court specifically contemplated circumstances in which a mislabeled cause of action arising from so-called "malicious prosecution" could nonetheless be cognizable under § 1983:

> The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection— *the Fourth Amendment if the accused is seized and arrested, for example*, or other constitutionally secured rights if a case is further pursued.  Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983.  Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

*Id.* at 953-54 (5th Cir. 2003) (emphasis added).

Here, Plaintiff's free-standing claim for malicious prosecution is barred as a matter of settled Fifth Circuit law.  *See id.*  Nevertheless, the Court recognizes that, under *Castellano*, "additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation."  *Id.* at 953.  Accordingly, the Court will permit Plaintiff one opportunity to re-plead a non-duplicative cause of action arising out of the events that led to his abandoned prosecution, to the extent any "prosecution" has even occurred in this case.

### 3.    Plaintiff's common law assault claim

The sole ground upon which Ortega seeks dismissal of Plaintiff's state law assault claim is that "[t]he reasonable use of force occasioned by the Plaintiff's resistance and refusal to follow commands constituted both justification and excuse."  *See* Ortega's Mot. 7.  This argument is plainly without merit.

"In Texas, the elements of a cause of action for assault and battery are the same in civil law as they are in criminal law."  *Almond v. Tarver*, 468 F. Supp. 2d 886, 903-04 (E.D. Tex. 2006) (collecting Texas cases so holding).  The Texas legislature has consolidated assault and battery into a single section of the Texas Penal Code, labeled "assault."  *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014) (discussing elements of civil assault claims under Texas law).  Section 22.01 of the Texas Penal Code provides that a person commits an assault if the person either:  "(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ; (2) intentionally or knowingly threatens another with imminent bodily injury . . . ; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."  *See* Tex. Penal Code. Ann. § 22.01(a).

Texas law further provides police officers with a civil-defense privilege.  *See* Tex. Penal Code Ann. § 9.51(a).  Specifically, Texas law states that "[a] peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or search."  *Id.*  The privilege is only available, however, where the officer "reasonably believes the arrest or search is lawful" and where "before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer or as one acting at a peace officer's direction, unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested."  *Id.*

Here, Ortega's assertion of the civil-defense privilege fails for multiple reasons.  First, while Ortega may maintain, and discovery may reveal, that his use of force was reasonable and justifiable under the circumstances, the only facts relevant to resolving Ortega's Motion are those alleged in the Complaint.  *See Calhoun*, 312 F.3d at 733 ("In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.").  As discussed above, the Complaint provides no basis to conclude that Ortega reasonably believed beating Plaintiff after he was handcuffed and subdued was "immediately necessary" to effectuate the arrest.  *See* Tex. Penal Code Ann. § 9.51(a); *see also O'Bryant v. Walker Cnty.*, Civil Action No. H-08-1880, 2009 WL 3073924, at *4 (S.D. Tex. Sept. 21, 2009) ("The same fact issues surrounding an excessive force claim are present in Plaintiff's state law cause of action for assault and battery.").  Second, the civil-defense privilege is inapplicable for the additional reason that Ortega did not "identif[y] himself as a peace officer" prior to using force.  *See* Tex. Penal Code Ann. § 9.51(a)(2).  To the contrary, Plaintiff explicitly alleges that Ortega pursued him "without ever attempting to identify

himself" as a law enforcement official.  *See* Compl. ¶ 25.  When combined with the fact that

Ortega was wearing plain clothes and driving an unmarked police cruiser at the time of the

incident, this allegation likewise defeats Ortega's invocation of § 9.51(a).  Accordingly, Ortega's

Motion is denied as it relates to Plaintiff's assault claim.

### 4.    Leave to amend claims against Ortega and the Unknown Officers

When a court dismisses one or more of a plaintiff's claims pursuant to Rule 12(b)(6), the

court should generally give the plaintiff an opportunity to amend the complaint.  *See Hart v.*

*Bayer Corp.*, 199 F.3d 239, 247-48 n.6 (5th Cir. 2000).  However, the court need not grant leave

to amend when the plaintiff has already pleaded his "best case," *see, e.g.*, *Smith v. Wells Fargo*

*Bank, N.A.*, No. 3:12–cv–4633–K–BN, 2013 WL 3324195, at *11 (N.D. Tex. June 28, 2013)

(quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)) (internal quotation marks

omitted), or where any amendment would be futile.  *See LaCroix v. Marshall Cnty.*, 409 F.

App'x 794, 802 (5th Cir. 2011) ("[T]he district court need not permit futile amendments.");

*accord Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).

Plaintiff's counsel's failure to defend the Complaint in the face of Ortega's Motion is

strong evidence that Plaintiff has pleaded his best case.  *See Smith*, 2013 WL 3324195, at *12

(declining to allow leave to amend where the plaintiff, "despite being represented by counsel, did

not even file a response to Defendant's Motion"); *Salmeron v. CitiMortgage, Inc.*, Civil Action

No. 3:11-CV-1398-M-BK, 2012 WL 760110, at *3 (N.D. Tex. Feb. 3, 2012) (denying plaintiff

leave to amend the Complaint where "counseled Plaintiffs . . . failed to timely respond to

Defendants' motion to dismiss for failure to state a claim"), *report and recommendation adopted*

*by* 2012 WL 760109 (N.D. Tex. Mar. 7, 2012).  Nevertheless, in light of the conclusory nature of

the Complaint, this Court cannot say that all of Plaintiff's dismissed claims are barred as a matter

of law.  Accordingly, the Court will give Plaintiff one chance to amend his individual-capacity

causes of action against Ortega and the Unknown Officers to the extent those claims are not

otherwise precluded by the Court's Order.[6]

### C.      Plaintiff's Claims Against Allen

As discussed above, a plaintiff's § 1983 claims against an individual in his or her official

capacity are duplicative of a plaintiff's claims against the government entity itself.  *See*

*McMillian*, 520 U.S. at 785 n.2; *Graham*, 473 U.S. at 166.  Here, Plaintiff explicitly states that he

is only suing Allen in his official capacity as Chief of the El Paso Police Department and official

policymaker for the City.  *See* Compl. ¶ 13.  Accordingly, the Court dismisses all claims against

Allen.  *See, e.g.*, *Castro Romero*, 256 F.3d at 355; *Thomas*, 800 F. Supp. 2d at 832-33; *Harger*,

2014 WL 3828375, at *2.  Moreover, because Plaintiff has sued the City directly, the Court

declines to grant Plaintiff leave to amend his official-capacity claims against Allen.  *See*

*LaCroix*, 409 F. App'x at 802.

### D.      Plaintiff's Claims Against the City

Unlike Ortega, the City explicitly moves to dismiss all of Plaintiff's claims.  *See* City's

Mot. 1.  These claims can be grouped into one of two categories:  (1) federal constitutional

violations arising under 42 U.S.C. §§ 1981 and 1983, and (2) state constitutional violations

arising under the Texas constitution.[7]  The Court analyzes each category in turn.

---

[6] The Court declines, however, to grant Plaintiff leave to amend his duplicative official-capacity claims against Ortega and the Unknown Officers because any amendment to these claims would be futile.  *See McMillian*, 520 U.S. at 785 n.2; *Graham*, 473 U.S. at 166; *see also LaCroix*, 409 F. App'x at 802.

[7] The City also moves to dismiss Plaintiff's claims for assault and IIED.  *See* City's Mot. 1.  Unlike the City, the Court reads the Complaint as asserting these claims against Ortega in his individual capacity only.  *See* Compl. ¶¶ 148-49.  To the extent that Plaintiff has made such claims against the City, however, the City's Motion is granted and the claims are hereby dismissed because Texas does not waive its sovereign immunity for actions "arising out of assault, battery, false imprisonment, or any other intentional tort."  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057; *Gordon*, 434 S.W.3d at 594 ("The Texas Tort Claims Act waives governmental immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts."); *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (holding that the plaintiff's IIED claim against the city was barred by

### 1.   Plaintiff's *Monell* claims[8]

Plaintiff's § 1983 claims against the City mirror his § 1983 claims against Ortega and the Unknown Officers.  Specifically, Plaintiff alleges that the City is liable for its deliberately indifferent policies, practices, training, and supervision in connection with the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  *See* Compl. ¶¶ 130-46.  The City argues that these claims must be dismissed because "Plaintiff pleads no facts to support [his contention] that the City has a pattern, custom or practice of seizing individuals using excessive force, retaliating against free speech, discriminating against race or disability, maliciously deciding to file a criminal charge, or causing cruel and unusual punishment."  *See* City's Mot. 3.  After thoroughly reviewing Plaintiff's Complaint, the Court agrees.

### a.   Policy, custom, or widespread practice

It is well established that a municipality cannot be found liable under § 1983 based upon a vicarious liability theory.  *Monell*, 436 U.S. at 691.  Instead, liability attaches only where the municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Id.* at 694; *see also Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) ("Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation.").

To meet this standard, the Fifth Circuit requires proof of three elements:  (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights the "moving force" of which is the official policy or custom.  *See Peterson v. City of Fort Worth*,

---

governmental immunity); *Huff v. Refugio Cnty. Sheriff's Dep't*, Civil Action No. 6:13-CV-00032, 2013 WL 5574901, at *3 (S.D. Tex. Oct. 9, 2013) ("[B]ecause the County has not waived its sovereign immunity for intentional torts like assault and battery, Huff's state law claims must be dismissed.").

[8] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (setting forth standard for municipal liability under § 1983).

588 F.3d 838, 847 (5th Cir. 2009); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). While a municipality's official policy is often proven by reference to a "statement, ordinance, regulation, or decision," it can also be established through proof of "[a] persistent, widespread practice . . . so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). For a custom or practice to be considered a de facto policy, however, a plaintiff must allege facts "showing a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582.

Here, Plaintiff does not even approach alleging the factual content necessary to survive a motion to dismiss on any of his *Monell* claims. As an initial matter, the Court notes that Plaintiff does not point to any statement, ordinance, regulation, or decision that is alleged to be the official policy of the City. Instead, Plaintiff appears to rely solely upon his contention that the City "allowed its police officers to follow an unwritten custom or policy" of violating various constitutional rights. *See* Compl. ¶ 39. For example, with respect to his Fourth Amendment claim, Plaintiff alleges without any supporting facts that the City has "encouraged, tolerated, ratified, and acquiesced to a dangerous environment of police brutality." *Id.* ¶ 47. While it should be self-evident that "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations," *Piotrowski*, 237 F.3d at 581, isolated violations are all that remain after the Court sets aside Plaintiff's unsubstantiated legal conclusions. *Cf. Oporto v. City of El Paso*, No. EP-10-CV-110-KC, 2010 WL 3503457, at *5 (W.D. Tex. Sept. 2, 2010) (denying city's motion to dismiss Fourth Amendment *Monell* claim where plaintiff alleged "thirty-two prior incidents, spanning fifteen years, in which El Paso Police Department officers allegedly made use of excessive deadly force"); *Rivera v. City of San Antonio*, Civil Action No.

SA-06-CA-235-XR, 2006 WL 3340908, at *12 (W.D. Tex. Nov. 15, 2006) (permitting *Monell*

action to proceed where complaint alleged that the San Antonio Police Department had received

hundreds of complaints involving the use of excessive force without any disciplinary action

taken).  As a result, Plaintiff's "formulaic recitation of the elements of a [*Monell*] cause of action

will not do," *see Twombly*, 550 U.S. at 555, and all claims predicated upon the City's alleged

policies and customs are hereby dismissed.  *See Spiller v. City of Texas City, Police Dep't*, 130

F.3d 162, 167 (5th Cir. 1997) (rejecting boilerplate allegations of a municipality policy and

custom as insufficient to survive a motion to dismiss).

> **b.**      **Failure-to-train and failure-to-supervise claims**

"[A] persistent, widespread practice of city officials or employers . . . may in an

appropriate case also encompass allegations that a policymaker failed to act affirmatively,

including a failure adequately to train a subordinate."  *Burge v. St. Tammany Parish*, 336 F.3d

363, 369 (5th Cir. 2003); *see also City of Canton v. Harris*, 489 U.S. 378, 390 (1989) ("[T]he

failure to provide proper training may fairly be said to represent a policy for which the city is

responsible, and for which the city may be held liable if it actually causes injury.").  To sustain a

§ 1983 claim based on a failure-to-train theory, a plaintiff must establish that "(1) the

municipality's training policy or procedure was inadequate; (2) the inadequate training policy

was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was

deliberately indifferent in adopting its training policy."  *Valle v. City of Houston*, 613 F.3d 536,

544 (5th Cir. 2010); *City of Canton*, 489 U.S. at 388 ("[T]he inadequacy of police training may

serve as the basis for § 1983 liability only where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact.").

Similarly, a municipality's failure to supervise or discipline its employees can also serve

as the basis for liability under § 1983.  *See Deville v. Marcantel*, 567 F.3d 156, 170-71 (5th Cir.

2009).  To sustain a failure-to-supervise claim, a plaintiff must allege facts capable of

demonstrating that "(1) the City failed to supervise or discipline its employees; (2) that the

failure to supervise or discipline amounted to deliberate indifference; and (3) that there is a direct

causal link between the failure to supervise or discipline and the alleged constitutional violation."

*Adams v. City of Laredo*, Civil Action No. L-08-165, 2011 WL 1988750, at *7 (S.D. Tex. May

19, 2011) (citing *Lewis v. Pugh*, 289 F. App'x 767, 771-72 (5th Cir. 2008)); *see also Goodman v.

Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009).

        Here, Plaintiff alleges no more facts supporting his failure-to-train and failure-to-

supervise claims than he does in support of his traditional *Monell* claims.  Instead, Plaintiff relies

on unsupported legal conclusions, such as his allegation that "[t]he deliberately indifferent

training and supervision provided by Defendant City and [Allen] resulted from a conscious or

deliberate choice to follow a course of action from among various alternatives available to

Defendant City and [Allen] and were moving forces in the constitutional and federal violation

injuries complained of by Plaintiff."  *See* Compl. ¶ 143.  As the Supreme Court has made clear,

"the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Once this Court looks past Plaintiff's

boilerplate allegations, there is nothing left from which the Court can infer a plausible failure-to-

train or failure-to-supervise claim against the City.  Accordingly, the Court dismisses all claims

predicated upon these theories as well.  *See Thomas v. City of New Orleans*, 883 F. Supp. 2d 669,

691 (E.D. La. 2012) (dismissing failure-to-train claim that relied "on the false safety of

boilerplate").

### 2.    Plaintiff's state constitutional claims

In addition to his § 1983 claims against the City, Plaintiff also asserts various causes of action arising under the Texas constitution.  *See* Compl. ¶ 147.  In particular, Plaintiff invokes Article 1, sections 9, 13, and 19, and further pleads that he is entitled to injunctive relief "to prevent the continuing violation of his rights."  *Id.*  The City responds with two arguments:  it contends that (1) Plaintiff has failed to allege sufficient facts to establish a violation of any state constitutional provision in the first instance, and (2) Plaintiff's claims are predicated upon state constitutional violations over which the City has not waived its sovereign immunity.  *See* City's Mot. 7-9.  Because the Court credits this second argument, it need not address whether Plaintiff's allegations are sufficient to state an underlying violation of the Texas constitution.

It is well-settled that there is no Texas corollary to § 1983, and the Texas constitution does not itself create a private right of action against the state for money damages.  *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995); *see also Amaya v. City of San Antonio*, 980 F. Supp. 2d 771, 782 (W.D. Tex. 2013).  Nevertheless, "while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions."  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 668-69 (Tex. 2009); *see also City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007); *Bouillion*, 896 S.W.2d at 149 ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited.").  In a recent decision, the Supreme Court of Texas explained that the reason these so-called "ultra vires" actions do not run afoul with the state's sovereign immunity is because they "do not attempt to exert control over the state—they attempt to reassert the control of the state."  *Heinrich*, 284 S.W.3d at 372.  Thus, to fall within the ultra vires exception, a plaintiff "must

allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.*; *see also Agee v. City of McKinney*, No. 4:12-CV-550, 2014 WL 1232644, at *15 (E.D. Tex. Mar. 22, 2014) (citing *Heinrich*, 284 S.W.3d at 372).

However, although a plaintiff may maintain an ultra vires action for equitable relief arising under the Texas constitution, the government entities themselves, "as a technical matter," remain immune from suit. *Heinrich*, 284 S.W.3d at 372-73. As a result, "these suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity." *Id.* at 373; *see also Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011) ("Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception:  an action alleging that the employee acted *ultra vires*." (footnote omitted)).

Here, to the extent Plaintiff is asserting that Ortega acted *in accordance* with some City policy, custom, or practice, his claim fails on sovereign immunity grounds. *See Livingston v. Beeman*, 408 S.W.3d 566, 573 (Tex. App. 2013). Absent allegations falling within the ultra vires exception, a suit against a city for injunctive relief "implicates sovereign immunity because it seeks to 'control state action,' to dictate the manner in which officers exercise their delegated authority." *See id.* (quoting *Heinrich*, 284 S.W.3d at 372); *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 (Tex. App. 2010) ("[I]f the plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action, and is barred by sovereign immunity."). To the extent Plaintiff is asserting that Ortega acted *without legal authority*, his ultra vires claim against the City is foreclosed under the Supreme Court of Texas's decision in *Heinrich*, 284 S.W.3d at 372-73. *See also Cardenas v. City of Laredo*, Civil Action No. L-10-12, 2011 WL 1542882, at *5

(S.D. Tex. Apr. 21, 2011) (dismissing action where plaintiff brought suit for equitable relief against government entity directly).  Either way, his state constitutional claims against the City must be dismissed.

        **3.**      **Leave to amend claims against the City**

After due consideration, the Court is inclined to provide Plaintiff one opportunity to re-plead his § 1983 claims against the City.  Additionally, if Plaintiff wishes to pursue his state constitutional claims for injunctive relief, the Court grants him leave to conform these claims to the requirements of Texas law by asserting them against Ortega in his official capacity.

## III.   CONCLUSION

For the foregoing reasons, Ortega's Motion, ECF No. 11, is hereby **GRANTED** in part and **DENIED** in part, as follows:

Ortega's Motion is **DENIED** as it relates to Plaintiff's § 1983 claim for excessive force and his state law claim for assault.  Ortega's Motion is **GRANTED** in all other respects.

The Court further **ORDERS** that the City's Motion, ECF No. 4, is hereby **GRANTED** in its entirety.

It is further **ORDERED** that Plaintiff shall have until December 3, 2014, to file a motion to amend the Complaint and re-plead the dismissed claims, as permitted by this Order.

     **SO ORDERED**.

     **SIGNED this 19th day of November, 2014.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE